62 So.3d 185 (2011)
STATE of Louisiana in the Interest of A.U.M.
Hector Galvan, Intervenor/Appellant.
No. 46,082-JAC.
Court of Appeal of Louisiana, Second Circuit.
February 16, 2011.
*186 Brenda F. Ford, for Intervenor/Appellant, Hector Galvan.
Michael E. Daniel, for Plaintiff/Appellee State of Louisiana, Dept. of Social Services.
Angela M. Smith, Legal Services of North La., Inc., for Minor Child, A.U.M., and a confidential party.
Angela G. Waltman, for Defendant/Appellee, M.G.M.
Before BROWN, GASKINS, and PEATROSS, JJ.
BROWN, Chief Judge.
Appellant, Hector Galvan, appeals from a judgment adjudicating A.M. to be a child in need of care. We affirm.

Facts
A.M. was born in Hidalgo County, Texas, on January 7, 1999. In 2006 he was living with his mother, Molly Muniz, and her boyfriend, Emilio Rodriguez. In September 2006, Molly Muniz was arrested and thereafter convicted of murder. She is presently serving a 10-year sentence in the state prison at Gatesville, Texas. The child was left with Emilio Rodriguez, who is an attorney. Testimony indicated that Rodriguez obtained an order from the Texas court appointing him as a non-parent temporary conservator of the child. In June 2009, Rodriguez, at the request of Muniz, sent the child to live with Muniz's *187 cousin, Leticia Rodriguez Clark, who resided in Mansfield, Louisiana. A.M. was enrolled in school in DeSoto Parish and has resided with Ms. Clark since June of 2009.
Hector Galvan resides with his wife and children in Tennessee. In early 2010, Muniz corresponded with Galvan, a former boyfriend. In February of 2010, both Galvan and Muniz executed and filed with the Texas Attorney General acknowledgments of Galvan's paternity of A.M. A new birth certificate was then issued naming Galvan as the father of A.M.
After Galvan attempted to take the child, a verbal Instanter Removal Order was issued by the 42nd J.D.C. in DeSoto Parish, Louisiana, on April 26, 2010, which placed the minor child, A.M. in the temporary custody of the State of Louisiana, Department of Social Services ("DDS"). Specifically, the trial court found that A.M. was a child in need of care pursuant to La. Ch. C. art. 606. Physical custody of A.M. was continued with Leticia Clark, a maternal cousin of the child with whom A.M. had been living since June of 2009. This order was served upon Molly Muniz at prison in Texas and upon appellant, Hector Galvan, the alleged father, in Tennessee.
A DNA test was performed at the insistence of DSS which revealed that Galvan was not the biological father of A.M. On May 25, 2010, DSS filed a petition to adjudicate A.M. as a child in need of care. Because Galvan was not the biological father, neither Galvan nor his attorney were served with a copy of this petition.
The next filing in the Louisiana record was an unauthenticated copy of a "First Amended Order Adjudicating Parentage" signed on May 28, 2010, by the 139th Judicial District Court of Hidalgo County, Texas, Case No. F-4754-05-C, "In the Interest of [A.M.], a Child." The Texas court found that it had jurisdiction over the matter and adjudicated Galvan to be the father of A.M. and declared the parent-child relationship to be established for all purposes. It did not adjudicate custody. The Texas court based its opinion on the fact that Galvan admitted paternity "under oath and that there is no reason to question the admission." Obviously Galvan did not inform the court of the DNA test results.
On June 28, 2010, Galvan filed a "Petition for Intervention and to Recognize Foreign Judgment" in the Louisiana proceedings.
On August 10, 2010, the Louisiana court rendered a judgment of disposition adjudicating A.M. to be a child in need of care and assigning the legal custody of A.M. to DSS, the DeSoto Parish Office of Community Services. The following is excerpted from the trial court's judgment of disposition:
[A.M.] was ordered in[to] the custody of the state by Judge Robert Burgess. He was to remain in the home of Leticia Clark. Ms. Clark is a maternal cousin to [A.M.] and [he] has been residing with her since June 2009. [A.M.]'s mother is currently incarcerated at Lane Murray in Gatesville, Texas, for 1st degree murder. Her release year is 2016. Ms. Muniz also has a history with Child Protection Services. Hector Galvan, Jr., is the alleged father of [A.M.]. Mr. Galvan, who resides in Tennessee, wants custody of [A.M.]. He has no prior involvement with [A.M.]. Mr. Galvan has tried to remove [A.M.] from Stanley Elementary without the caretaker's permission and has also changed [A.M.]'s name to his last name on legal documents, i.e., birth certificate, social security card, and has even obtained health insurance. He has obtained an order adjudicating parentage on false information. *188 Mr. Galvan also has a lengthy criminal history, i.e., forgery, burglary, domestic violence and possession of marijuana.
In its oral reasons for denying the Texas judgment full faith and credit, the trial court stated:
The [second] Texas judgment [adjudicating paternity] is not recognized by this Court. It is clear that at the time the Texas court has failed to recognize that Louisiana was the home state of that child having been here, present, in school, for over six months.... I do not recognize the Texas decree ... the actions of the Texas court [in] not recognizing that this Court has primary jurisdiction, not recognizing that this Court has jurisdiction by stipulation of the parties in a previous order of custody, the Court juveniles adjudicate this child in need of care and rejects the intervention by Mr. Galvan.
It is from this judgment that Hector Galvan has appealed.

Discussion
One issue in this appeal is whether the Louisiana trial court had subject matter jurisdiction. The court specifically found that Louisiana was the child's home state.
The UCCJEA[1] provides the exclusive jurisdictional basis in state law for making a child custody determination by a Louisiana court. La. R.S. 13:1813(B). The UCCJEA provides five grounds, in preferential order, that warrant an exercise of jurisdiction over a child in an interstate matter relating to the child's custody: (1) Louisiana is or was the home state of the child; (2) another state lacks jurisdiction and the child and at least one of the parents has a significant connection with the state and significant evidence relating to custody is found in this state; (3) all courts have declined jurisdiction because Louisiana is the appropriate forum;(4) no other court would have subject matter jurisdiction under the Act; or (5) the Louisiana court has temporary jurisdiction based on emergency circumstances. La. R.S. 13:1813(B).
The trial court found that it has home state jurisdiction over A.M. by virtue of the child's presence in this state for more than six months prior to institution of the child in need of care proceedings. La. R.S. 13:1802(7)(a) defines "home state" as the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. La. R.S. 13:1802(13) defines "person acting as a parent" as a person, other than a parent, who: (a) has physical custody of the child ... and (b) has been awarded legal custody by a court or claims a right to legal custody under the laws of this state. The testimony clearly shows that Leticia Clark was given the child by its mother who was in prison for murder and by the court appointed nonparent temporary managing conservator, Emilio Rodriquez. The child has lived in Louisiana with Ms. Clark continuously for more than six months and has been enrolled in DeSoto Parish schools since June of 2009. Further, no other state would have subject matter jurisdiction. The child has not resided in Texas for the last six months. Galvan, who resides in Tennessee, is not the child's biological father.
Before a state court will have jurisdiction to modify a custody order under the Act, certain statutory requirements must be met. Primary jurisdictional considerations under the Act are the length of time the child has been in the *189 state, the child's connections to the state, and the availability of evidence in the state concerning the child's care. Since A.M. has not lived in Texas for six consecutive months within six months preceding the current action, Texas is not the child's home state. Where there is no home state, jurisdiction may depend on whether the child or at least one of the parents has significant connections with the state and whether there is available in the state significant evidence concerning the child's care and personal relationships. These elements are present in Louisiana, and Louisiana is justified in exercising jurisdiction under this state's codification of the UCCJEA.
As for Galvan's argument that the trial court erred in finding A.M. to be a child in need of care, we have reviewed the record and find that, in light of the unique facts and circumstances of this particular case, the trial court did not err in adjudicating A.M. to be a child in need of care. With his mother, the only parent he has ever known, convicted of murder and incarcerated in Texas, A.M. certainly qualifies both as a child "without necessary... supervision because of the ... prolonged absence of his parent" and one "placed at substantial risk of imminent harm because of the continuing absence of the parent" as set forth in La. Ch. C. art. 606(A)(3).
The state through the DSS, having established one of the statutory grounds for adjudication as a child in need of care as set forth in La. Ch. C. art. 606, thereafter created a case plan for A.M. which at the current time has the child in foster care with Ms. Clark, the maternal relative with whom he has been living for more than a year. The primary goal of the permanent plan currently in place for A.M. is reunification with his mother or guardianship with a relative such as Ms. Clark (while his mother is incarcerated).[2]
As noted by this court in State ex rel. J.K., 33,878 (La.App.2d Cir.06/23/00), 764 So.2d 287, 292, writ denied, 00-2637 (La.10/06/00), 771 So.2d 83, the health, safety and best interest of the child are the paramount concerns in all child in need of care proceedings. La. Ch. C. art. 601; State ex rel. L.B., 08-1539 (La.07/17/08), 986 So.2d 62.

Conclusion
The trial court had jurisdiction and correctly evaluated the evidence and found A.M. to be a child in need of care. The court's findings are fully supported by the testimony and documentation. Thus, we affirm.
AFFIRMED.
NOTES
[1] Uniform Child Custody Jurisdiction and Enforcement Act.
[2] While the state has an interest in protecting an innocent child, it also has an interest in preserving the parent-child relationship. A finding that A.M. is a child in need of care does not destroy this relationship, but merely proposes to modify it until such time as the child is safe in the relationship.